*In The*

# United States Court of Appeals

## *For The Fourth Circuit*

## DANIELLE GORE SPIVEY,

*Plaintiff – Appellant,*

**v.**

## KEVIN NORRIS; WESTERN SURETY CO.,

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON**

_____

**BRIEF OF APPELLEES**

_____

| | |
|---|---|
| **Bradley O. Wood** | **Norwood P. Blanchard, III** |
| **WOMBLE CARLYLE SANDRIDGE & RICE** | **CROSSLEY MCINTOSH COLLIER** |
| **A Professional Limited Liability Company** | **HANLEY & EDES, P.L.L.C.** |
| **One West Fourth Street** | **5002 Randall Parkway** |
| **Winston-Salem, North Carolina 27102** | **Wilmington, North Carolina 28441** |
| **(336) 728-7012** | **(910) 762-9711** |
| | |
| *Counsel for Kevin Norris in his official capacity,* | *Counsel for Defendant Detective* |
| *Lewis L. Hatcher, and Western Surety Company* | *Kevin Norris in his individual capacity* |

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __17-1493__      Caption: __Danielle Gore Spivey v. Kevin Norris, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Western Surety Company__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Western Surety Company is a private corporation owned by Continental Casualty Corporation, which is owned by Continental Corporation, which is a wholly owned subsidiary of CNA Financial Corporation, which is a publicly traded company, 90 percent of which is owed by Lowes Corporation.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          ☑ YES ☐ NO
      If yes, identify all such owners:
      See No. 2 above.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Bradley O. Wood _____    Date: _____04/21/2017_____

Counsel for: Appellee Western Surety Company _____

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____04/21/2017_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Bradley O. Wood _____          _____04/21/2017_____
              (signature)                                                    (date)

- 2 -

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __17-1493__    Caption: __Danielle Gore Spivey v. Kevin Norris, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kevin Norris, in his official capacity only__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations? ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Bradley O. Wood                          Date:        04/21/2017

Counsel for: Appellee Kevin Norris

## CERTIFICATE OF SERVICE
***************************

I certify that on        04/21/2017        the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Bradley O. Wood                                        04/21/2017
        (signature)                                              (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iv

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE................................................................................1

STATEMENT OF THE FACTS .............................................................................4

SUMMARY OF THE ARGUMENT .....................................................................11

ARGUMENT .........................................................................................................13

    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
    JUDGMENT IN FAVOR OF THE DEFENDANTS BECAUSE THE
    PLAINTIFF'S ARREST WAS SUPPORTED BY PROBABLE
    CAUSE; DEFENDANT NORRIS WAS NOT THE COMPLAINING
    WITNESS AND OTHERWISE DID NOT INITIATE CRIMINAL
    PROCEEDINGS AGAINST THE PLAINTIFF; THE CRIMINAL
    PROCEEDINGS AGAINST THE PLAINTIFF WERE NOT
    TERMINATED IN HER FAVOR; AND BECAUSE PLAINTIFF
    CANNOT OTHERWISE ESTABLISH THE ELEMENTS
    NECESSARY TO GO FORWARD WITH HER CLAIMS ........................13

    I.    THE DISTRICT COURT PROPERLY GRANTED
        SUMMARY JUDGMENT IN FAVOR OF THE
        DEFENDANTS AS THERE ARE NO GENUINE ISSUES OF
        MATERIAL FACT TO DISPUTE THAT PLAINTIFF'S
        ARREST WAS SUPPORTED BY PROBABLE CAUSE AND
        THAT HER RIGHTS WERE OTHERWISE NOT VIOLATED.......13

II.     PLAINTIFF'S SECTION 1983 CLAIMS FAIL AS A
        MATTER OF LAW BECAUSE PROBABLE CAUSE
        EXISTED TO SUPPORT BOTH HER ARREST AND THAT
        OF HER HUSBAND, AND BECAUSE DETECTIVE
        NORRIS WAS NOT THE COMPLAINING WITNESS ..................14

        A.      THE PLAINTIFF'S ARREST WAS SUPPORTED BY
                PROBABLE CAUSE...................................................15

        B.      PLAINTIFF'S CLAIMS FAIL, AS NORRIS WAS NOT
                THE COMPLAINING WITNESS ...........................................22

        C.      PLAINTIFF'S SECTION 1983 CLAIMS ALLEGING
                VIOLATIONS OF HER FIRST AMENDMENT AND
                FOURTEENTH AMENDMENT RIGHTS LIKEWISE
                FAIL AS A MATTER OF LAW ...............................................25

        D.      DETECTIVE NORRIS IS ENTITLED TO QUALIFIED
                IMMUNITY ..............................................................................26

        E.      PLAINTIFF'S SECTION 1983 OFFICIAL CAPACITY
                CLAIMS FAIL AS A MATTER OF LAW..............................29

III.    THE DISTRICT COURT CORRECTLY GRANTED
        SUMMARY JUDGMENT IN FAVOR OF THE
        DEFENDANTS AS TO PLAINTIFF'S STATE LAW TORT
        CLAIM .............................................................................................31

        A.      PLAINTIFF'S CLAIM FOR MALICIOUS
                PROSECUTION FAILS AS A MATTER OF LAW ...............31

        B.      PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS
                FAILS AS A MATTER OF LAW...........................................35

        C.      PLAINTIFF'S CLAIM FOR INTENTIONAL
                INFLICTION OF EMOTIONAL DISTRESS FAILS AS
                A MATTER OF LAW ............................................................36

1.    The Actions Taken by Detective Norris Were, as a Matter of Law, Not "Extreme and Outrageous"............37

2.    Plaintiff Has Brought Forward No Evidence That Detective Norris Intended to Cause Her Severe Emotional Distress.........................................................38

3.    Plaintiff Has Failed to Bring Forward Evidence That Any Conduct on the Part of Detective Norris Caused Her to Suffer Severe Emotional Injury..............39

D.    PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW .............................................................41

E.    NORRIS IS ENTITLED TO PUBLIC OFFICER'S IMMUNITY IN HIS INDIVIDUAL CAPACITY ..................43

F.    PLAINTIFF'S OFFICIAL CAPACITY STATE LAW TORT CLAIMS ARE BARRED BY GOVERNMENTAL IMMUNITY ...........................................44

G.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM ON SHERIFF HATCHER'S OFFICIAL BOND.......48

CONCLUSION ......................................................................................48

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Alexander v. Lindsey,
    230 N.C. 663, 55 S.E.2d 470 (1949) ........................................................34, 35

Anderson v. Creighton,
    483 U.S. 635 (1987)................................................................................28

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 106 S. Ct. 2505 (1986) ..........................................................14

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009)...........................................................................24

Baker v. Ellis,
    204 F.2d 353 (5th Cir. 1953) ....................................................................10

Beroth Oil Co. v. Whiteheart,
    173 N.C. App. 89, 618 S.E.2d 739 (2005) ....................................................32

Best v. Duke Univ.,
    337 N.C. 742, 448 S.E.2d 506 (1994). ........................................................32

Bonvillain v. Blackburn,
    780 F.2d 1248 (5th Cir. 1986) ...................................................................10

Briggs v. Rosenthal,
    73 N.C. App. 672, 327 S.E.2d 308 (1985) ....................................................37

Brooks v. City of Winston-Salem,
    85 F.3d 178 (4th Cir. 1996) ..................................................................15, 18

Brown v. Gilmore,
    278 F.3d 362 (4th Cir. 2002) ....................................................................15

Byrd v. Hopson,
    265 F. Supp. 2d 594 (W.D.N.C. 2003)..........................................40

Celotex Corp. v. Catrett,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ........................................13

City of Oklahoma City v. Tuttle,
    471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ..............................31

Collins v. City of Harker Heights,
    503 U.S. 115, 112 S. Ct. 1061 (1992) ........................................30

Dalenko v. Wake County Department of Human Services,
    157 N.C. App. 49, 578 S.E.2d, 599 (2003) ..................................45

Devenpeck v. Alford,
    543 U.S. 146, 125 S. Ct. 588 (2004) ........................................18, 42

Dickens v. Puryear,
    302 N.C. 437, 276 S.E.2d 325 (1981) ......................................36, 38

Dobson v. Harris,
    134 N.C. App. 573, S.E.2d 710 (1999), rev'd on other grounds,
    352 N.C. 77, 530 S.E.2d 829 (2000) ........................................40

Doe v. Jenkins,
    144 N.C. App. 131, 547 S.E.2d 124 (2001) ..................................45

Earley v. Haywood County Department of Social Services,
    204 N.C. App. 338, 694 S.E.2d 405 (2010) ..................................47

Edwards v. City of Goldsboro,
    178 F.3d 231 ....................................................................27

Ellis v. Wellons,
    224 N.C. 269, 29 S.E.2d 884 (1944) ........................................35

Eubanks v. State Farm Fire and Casualty Company,
    126 N.C. App. 483, 485 S.E.2d 870, rev. den.
    347 N.C. 265, 493 S.E.2d 452 (1997) ......................................42

Frink v. Batten,
    197 N.C. App. 231, 676 S.E.2d 670 (2009) ..................................47

Hare v. Butler,
    99 N.C. App. 693, 394 S.E.2d 231 (1990) ...................................43

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S. Ct. 2727 (1982) ........................................26

Henry v. Purnell,
    652 F.3d 524 (4th Cir. 2011) ........................................................26

Herring v. United States,
    555 U.S. 135, 129 S. Ct. 695 (2009) ..........................................21

Hunter v. Bryant,
    502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) ..............28

Illinois v. Gates,
    462 U.S. 213, 103 S. Ct. 2317 (1983) ...................................16, 17

Jacobs v. Sherard,
    36 N.C. App. 60, 243 S.E.2d 184 (1978) ....................................43

Johnson v. Ruark Obstetrics & Gynecology Assoc.,
    327 N.C. 283, 395 S.E.2d 85, reh'g denied,
    327 N.C. 644, 399 S.E.2d 1330 (1990) ..................................39, 41

Jones v. Kearns,
    120 N.C. App. 301, 462 S.E.2d 245 (1995) ................................43

Kalina v. Fletcher,
    522 U.S. 118, 118 S. Ct. 502 (1997) ......................................23, 24

Kentucky v. Graham,
    473 U.S. 159, 105 S. Ct. 3099 (1985) .........................................29

Kling v. Harris Teeter Inc.,
    338 F. Supp. 2d 667 (W.D.N.C. 2002) aff'd per curiam,
    86 Fed. Appx. 662 (4th Cir. 2004) ..............................................38

Lambert v. Williams,
    223 F.3d 257 (4th Cir. 2000) .........................................................................14

Leete v. County of Warren,
    341 N.C. 116, 462 S.E.2d 476 (1995) ..........................................................43

Lenins v. K-Mart Corporation,
    98 N.C. App. 590, 391 S.E.2d 843 (1990) ...................................................37

Magana v. Charlotte-Mecklenburg Board of Education,
    183 N.C. App. 146, 645 S.E.2d 91 (2007) ...................................................47

Malley v. Briggs,
    475 U.S. 335, 106 S. Ct. 1092 (1986) .......................................16, 23, 26, 29

Marcus v. Bernstein,
    117 N.C. 31, 23 S.E. 38 (1895) ...................................................................34

Maryland v. Pringle,
    540 U.S. 366, 124 S. Ct. 795 (2003) ...........................................................17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S. Ct. 1348 (1986) .........................................................13

McVey v. Stacey,
    157 F.3d 271 (4th Cir. 1998) ................................................................. 27-28

Melgar v. Greene,
    593 F.3d 348 (4th Cir. 2010) .......................................................................27

Messerschmidt v. Millender,
    565 U.S. 535, 132 S. Ct. 1235 (2012) ...................................................18, 19

Mitchell v. Lydall, Inc.,
    1994 WL 38703 (4th Cir. 1994) ..................................................................42

Mitchell v. Rice,
    954 F.2d 187 (4th Cir. 1992) .......................................................................27

Monell v. Dep't of Soc. Svcs.,
    436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ..............24, 29, 30, 31

Moore v. City of Creedmoor,
    345 N.C. 356, 481 S.E.2d 14 (1997) ...........................................................29

Morrison-Tiffin v. Hampton,
    117 N.C. App. 494, 451 S.E.2d 650 (1995) ...................................................37

Mullis v. The Pantry, Inc.,
    93 N.C. App. 591, 378 S.E.2d 578, rev. den,
    325 N.C. 272 (1989). ......................................................................................39

North Carolina v. Alford,
    400 U.S. 25, 91 S. Ct. 160 (1970) .........................................................passim

Ornelas v. United States,
    517 U.S. 690, 116 S. Ct. 1657 (1996) ....................................................16, 17

Owen v. Haywood County,
    205 N.C. App. 456, 697 S.E.2d 357 (2010 ...................................................47

Parrish v. Cleveland,
    372 F.3d 294 (4th Cir. 2004) ..................................................................27, 28

Patrick v. Wake County Department of Human Resources,
    188 N.C. App. 592, 655 S.E.2d 920 (2008) ..................................................48

Pearson v. Callahan,
    555 U.S. 223, 129 S. Ct. 808 (2008) ............................................................27

Phillips v. Gray,
    163 N.C. App. 52, 592 S.E.2d 229 (2004) ..............................................44, 45

Pierson v. Ray,
    386 U.S. 547, 87 S. Ct. 1213 (1967) .............................................................21

Porterfield v. Lott,
    156 F.3d 563 (4th Cir.1998) ..................................................................17, 18

Price v. Davis,
    132 N.C. App. 556512 S.E.2d 783 (1999) ...................................45

Rehberg v. Paulk,
    566 U.S. 356, 132 S. Ct.1497 (2012) ........................................23

Reichle v. Howards,
    566 U.S. 658, 132 S. Ct. 2088 (2012) .........................................26

Rowland v. Perry,
    41 F.3d 167 (4th Cir. 1994) ........................................................28

Satorre v. New Hanover County Board of Commissioners,
    165 N.C. App. 173, 598 S.E.2d 142 (2004) ...............................45

Saucier v. Katz,
    533 U.S. 194 (2001).............................................................27, 28

Scott v. Harris,
    550 U.S. 372, 167 L. Ed. 2d 686 (2007) ............................... 13-14

Smith v. Munday,
    848 F.3d 248 (4th Cir. 2017) ...............................................16, 19

Stafford v. Barker,
    129 N.C. App. 576, 502 S.E.2d 1, rev. den.,
    348 N.C. 695 (1998) ..............................................................47,48

Stanback v. Stanback,
    297 N.C. 181, 254 S.E.2d 611 (1979) ...................................35, 36

Street v. Surdyka,
    492 F.2d 368 (4th Cir. 1974) ............................................... 15-16

Taylor v. List,
    880 F.2d 1040 (9th Cir. 1989) ....................................................24

Temkin v. Frederick County Comm'rs,
    945 F.2d 716 (4th Cir. 1991) cert. denied,
    502 U.S. 1095, 112 S. Ct. 1172 (1992) .......................................30

Thompson v. Potomac Elec. Power Co.,
    312 F.3d 645 (4th Cir. 2002) ........................................................................14

Torchinsky v. Siwinski,
    942 F.2d 257 (4th Cir. 1991) ........................................................................29

Trulock v. Freeh,
    275 F.3d 391 (4th Cir. 2001) ........................................................................24

United States v. Dickey-Bey,
    393 F.3d 449 (4th Cir. 2004) ..................................................................16, 17

United States v. Gray,
    137 F.3d 765 (4th Cir.1998) ........................................................................17

United States v. Humphries,
    372 F.3d 653 (4th Cir. 2004) ........................................................................17

United States v. Jabbour,
    259 Fed. Appx. 564 (4th Cir. 2007) ............................................................15

Waddle v. Sparks,
    331 N.C. 73, 414 S.E.2d 22 (1992) ..............................................................39

Webster v. Estelle,
    505 F.2d 926 (5th Cir.1974) ........................................................................10

Welch v. Cheek,
    125 N.C. 353, 34 S.E. 531 (1899) ................................................................34

Wilson v. Layne,
    526 U.S. 603, 119 S. Ct. 1692 (1999) ..................................................2, 7, 28

Young v. Vega,
    574 Fed. Appx. 684 (6th Cir. 2014) ............................................................23

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I ............................................................................1, 11, 14, 25

U.S. CONST. amend. IV .................................................................................passim

U.S. CONST. amend. XIV .............................................................................14, 25

## STATUTES

28 U.S.C. § 1291 ....................................................................................................1

42 U.S.C. § 1983 .............................................................................................passim

N.C. Gen. Stat. § 58-76-5 ...........................................................................3, 47, 48

N.C. Gen. Stat. § 90-96..........................................................................................34

N.C. Gen. Stat. § 90-96(e) ...............................................................................passim

N.C. Gen. Stat. § 153A-435(a) ..............................................................................45

N.C. Gen. Stat. ¶ 90-95(H)(4)..................................................................................8

N.C. Gen. Stat. ¶ 90-108(A)(10)..............................................................................8

## RULES

Fed. R. Civ. P. 26(a)(2)...........................................................................................39

Fed. R. Civ. P. 56 ....................................................................................................1

Fed. R. Civ. P. 56(a)................................................................................................13

## OTHER AUTHORITIES

David A. Logan & Wayne A. Logan, North Carolina Torts § 19.40 (1996) ..........35

http://www.webmd.com/drugs/2/drug-9824/xanax-oral/details..............................40

## STATEMENT OF JURISDICTION

The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the District Court correctly granted the Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure?

## STATEMENT OF THE CASE

Plaintiff-Appellant Danielle Gore Spivey ("Plaintiff") filed her original Complaint in this matter on August 1, 2015, seeking the recovery of compensatory and punitive damages in connection with her criminal prosecution for unlawfully obtaining and possessing prescription narcotics. Plaintiff named as defendants Columbus County Sheriff's Detective Kevin Norris, in both his official and individual capacities, Columbus County Sheriff Lewis L. Hatcher, in his official capacity only, and Western Surety Company, the surety on the official bond of the Sheriff of Columbus County ("Defendants").

After obtaining leave from the Court, Plaintiff filed her First Amended Complaint on January 12, 2016. (JA 11-38) Therein, Plaintiff asserted the following claims:

1.    A 42 U.S.C. § 1983 claim against Detective Norris in both his individual and official capacities, alleging that Norris' "retaliatory and malicious actions" violated her First Amendment right to freedom of association and her

1

right to privacy "held in her marriage." Plaintiff further contends that "Norris' intentional or reckless disregard for the truth in purporting to investigate a forged prescription without obtaining the original prescription and in causing a warrant to issue for [her] arrest without probable cause violated the Fourth Amendment's prohibition against unreasonable seizure." (JA 19-22, ¶¶ 42-59);

2. A 42 U.S.C. § 1983 claim against Detective Norris in his individual and official capacities styled as a claim for malicious prosecution and seizure "in violation of 42 U.S.C. § 1983," such claim being essentially redundant to her first cause of action (JA 22-24, ¶¶ 60-76);

3. A 42 U.S.C. § 1983 claim against Sheriff Hatcher in his official capacity, alleging a cause of action for supervisory liability (JA 24-26, ¶¶ 77-90);[1]

4. A North Carolina state law tort claim for malicious prosecution against Detective Norris in both his individual and official capacities. (JA 26-28, ¶¶ 91-104);

5. A North Carolina state law tort claim for abuse of process against Detective Norris in both his individual and official capacities (JA 28-30, ¶¶ 105-117);

---

[1] As noted below, Plaintiff has dismissed this claim in the course of the appellate proceedings.

6.     A North Carolina state law tort claim for intentional infliction of emotional distress against Detective Norris in both his individual and official capacities (JA 30-31, ¶¶ 118-129);

7.     A North Carolina state law tort claim against Detective Norris for negligent infliction of emotional distress in both his individual and official capacities (JA 32-34, ¶¶ 130-146); and

8.     A claim against Sheriff Hatcher's official bond pursuant to N.C. Gen. Stat. § 58-76-5.  (JA 34-35, ¶¶ 147-152)

The Defendants timely filed Answers to the Plaintiff's Amended Complaint (JA 38, 71) denying the Plaintiff's material allegations and asserting numerous affirmative defenses, including qualified immunity, governmental immunity, public officer's immunity, that Plaintiff's arrest and subsequent prosecution were supported by probable cause, and that the criminal proceedings against the Plaintiff did not terminate in her favor.

After the close of discovery, the Defendants filed motions for summary judgment as to each and every claim asserted by the Plaintiff.  (JA 89, 843)  On March 29, 2017, the District Court entered an Order and Judgment granting the Defendants' motions for summary judgment and dismissing the Plaintiff's claims with prejudice in their entirety.  (JA 946)

On April 17, 2017, the plaintiff filed a notice of appeal from the District Court's March 29, 2017 Order and Judgment. (JA 961).

On July 17, 2017, the parties filed a Joint Stipulation to dismiss the Plaintiff's Section 1983 supervisory liability claim against Sheriff Hatcher. (DE # 23) On July 18, 2017, this Court entered an Order dismissing this claim. (DE # 24)

## **STATEMENT OF THE FACTS**

In the Fall of 2012, Detective Kevin Norris, a narcotics detective with the Columbus County Sheriff's Office, received information that the Plaintiff had tried to fill a prescription for narcotic pain medication at a CVS Pharmacy in Loris, South Carolina, and that the pharmacist could not verify the prescription as legitimate. Norris further became aware of an allegation that the Plaintiff had passed a forged prescription at the Rite Aid pharmacy in Whiteville, North Carolina in August 2012. (JA 154:1-155:7, 359:23-361:1, 546:10-24, 845:¶ 3, 972) Because Norris knew the Plaintiff and her family, he felt it would be appropriate to let the North Carolina State Bureau of Investigation ("SBI") direct the investigation. (JA 360:8-12, 629:1-630:14) Consequently, Norris contacted Agent Cecil Cherry of the SBI's Drug Diversion Unit, with whom he had worked in other drug cases, to request SBI support in investigating the allegations against the Plaintiff. (JA 359:23-361:1, 545:6-546:14, 554:12-19)

Agent Cherry assumed the leadership and direction of the investigation of the Plaintiff. In this capacity, Cherry made all of the decisions and directed all of the actions in the investigation, including determining whom to interview and what investigative leads to pursue. (JA 360:22-361:14, 692:1-630:19) Norris served in a supporting role, accompanying Cherry during interviews and obtaining a court order to obtain the Plaintiff's records held by dentist Dr. Brent Lawson. (JA 361:6-11, 367:21-24; 371:1-11, 629:1-630:19)

Agent Cherry testified that he obtained pharmacy and other records pertaining to the Plaintiff pursuant to his authority under North Carolina law. (JA 568:25-569:12, 631:19-632:13, 984, 994, 997, 1000, 1002) Accompanied by Detective Norris, Agent Cherry visited the Rite Aid pharmacy where he inspected the original of a prescription written by Dr. Lawson on August 17, 2012 and used by the Plaintiff to obtain thirty (30) Percocet/Endocet tablets. (JA 587:1-591:3, 363:2-363:25) Based upon his inspection of the original prescription, Agent Cherry was of the opinion that the prescription had been altered, such that the number "20" pertaining to the Percocet/Endocet had been changed to "30." (JA 611:10-612:1, 633:1-2) Cherry, Norris and South Carolina Department of Health and Environmental Control (DHEC) Agent Pam Hucks interviewed the Plaintiff on November 7, 2012. During this interview, Plaintiff denied altering any prescriptions. However, she admitted that her husband frequently took her

Percocet tablets without her permission for his own use, to the extent that she hid her tablets from him.  (JA 163:1-22, 978-980)

Cherry and Norris also interviewed Dr. Brent Lawson.[2]  During this interview, Cherry heard and documented Dr. Lawson state to them that he never wrote prescriptions for 30 Percocet tablets, instead writing them for no more than 20.  (JA 433:3-12, 619:24-620:9, 974-976)[3]  Dr. Lawson confirmed that his records indicated that he had written the Plaintiff a prescription for only twenty Percocet/Endocet tablets on August 17, 2012.  (JA 506:20-507:20, 515:24-516:6, 551: 5-19, 975-976) Dr. Lawson told Agent Cherry and Detective Norris that he wrote his prescriptions first and then documented the prescription in the patient's chart.  Dr. Lawson confirmed that he would not write "30" on the prescription and then write "20" in the patient's chart.  (JA 467:22-46, 469:4, 620:21-23, 620:24-621:16)   Agent Cherry testified that during the course of the investigation, he did not uncover any information that led him to believe that there was a clerical error or other mistake to explain the discrepancy between Dr. Lawson's records, which indicated that he had prescribed the Plaintiff 20 Percocet tablets on August 17,

---

[2]  Plaintiff claims on page 12 of her brief that Norris interviewed Dr. Lawson by himself.  These claims are false.  In contrast to her claims, Plaintiff's citations to Norris' deposition clearly demonstrate that he interviewed Dr. Lawson with Agent Cherry.  (JA 569:18-570:3) Moreover, Dr. Lawson testified that he was interviewed by both Cherry and Norris.  (JA 443:3-12; 444:21)

[3] Dr. Lawson's records for the Plaintiff demonstrate that at no point in time did he ever prescribe the Plaintiff more than 20 Percocet pills.  (JA 522-528)

2012, and the Plaintiff obtaining 30 Percocet tablets from the Rite Aid pharmacy using this prescription. (JA 623:3-20, 637:8-15)

Agent Cherry testified that as a result of his investigation, he determined that there was probable cause to believe that the Plaintiff had altered the prescription written by Dr. Lawson on August 17, 2012 for twenty Percocet/Endocet tablets to read thirty tablets, thereby illegally obtaining ten Percocet/Endocet tablets. (JA 632:14-633:23) Agent Cherry testified that he came to this conclusion independently of anyone else. (JA 633:10-12)

Cherry and Norris met with Columbus County Assistant District Attorney (ADA) Heath Nance on November 29, 2012 to present the case to him. After reviewing the evidence, ADA Nance determined that there was probable cause to believe that the Plaintiff had altered a prescription to illegally obtain prescription narcotics. ADA Nance directed Cherry to seek warrants for the Plaintiff's arrest for "one count of obtaining a controlled substance by fraud or forgery and one count of level one trafficking." (JA 545:16-22, 556:19-21, 627:5-628:14)

Agent Cherry testified that he appeared before Magistrate G.L. Greene on November 29, 2012, who placed him under oath. (JA 626:3, 627:4, 634:12-18) Based upon Agent Cherry's sworn testimony as the complaining witness, Magistrate Greene determined that there was probable cause to believe that the Plaintiff had unlawfully obtained possession of 30 Percocet tablets by altering a

prescription, in violation of N.C. Gen. Stat. ¶ 90-108(A)(10), and that she had unlawfully possessed more than 14 grams but less than 28 grams of opiates, in violation of N.C. Gen. Stat. ¶ 90-95(H)(4). Consequently, Magistrate Greene issued warrants for the Plaintiff's arrest for these offenses. (JA 1021-22) Detective Norris was not the complaining witness for these arrest warrants and he did not present any testimony to the magistrate. (JA 846:¶ 8, 1021-1022)

Agent Cherry confirmed at his deposition that he would have made the decision to seek warrants for the Plaintiff's arrest regardless of whether or not Detective Norris had been involved in the investigation. (JA 637:22-25)

After obtaining warrants for the Plaintiff's arrest, Agent Cherry telephoned the Plaintiff to inform her that there were outstanding warrants for her arrest. (JA 167:13-169:15, 634:22-635:21) That evening, the Plaintiff surrendered to the Magistrate. She was processed and released on an unsecured bond. (JA 170:10-173:8, 222:20)

On the advice of her criminal defense counsel, the Plaintiff entered an Alford plea on January 15, 2013 to a reduced charge of misdemeanor possession of a Schedule II controlled substance. (JA 174:7-175:18, 236-11-237:11, 309-317) Plaintiff testified that it was her understanding and intent that pursuant to her plea bargain, she would be able to retain her nursing license and would ultimately be able to obtain an expunction of her criminal conviction pursuant to

8

N.C. Gen. Stat. § 90-96(e).[4]   (JA 233:9-25)   Following her <u>Alford</u> plea, the

Plaintiff was sentenced to probation, which included submitting to drug screenings

and a drug assessment.  (JA 240:10-241:12)

According to certified copies of court records, on February 22, 2013, the

charge of misdemeanor possession of a Schedule II controlled substance was

dismissed "per compliance to 90-96 conditions" and for no other reason.[5]   (JA

---

[4] N.C. Gen. Stat. § 90-96(e) states, in pertinent part:

 (e) Whenever any person who has not previously been convicted of (i) any felony offense under any state or federal laws; (ii) any offense under this Article; or (iii) an offense under any statute of the United States or any state relating to controlled substances included in any schedule of this Article or to that paraphernalia included in Article 5B of Chapter 90 of the General Statutes pleads guilty to or has been found guilty of (i) a misdemeanor under this Article by possessing a controlled substance included within Schedules I through VI of this Article, or by possessing drug paraphernalia as prohibited by G.S. 90-113.22 or (ii) a felony under G.S. 90-95(a)(3), the person may be eligible to apply for cancellation of the judgment and expunction of certain records related to the offense pursuant to G.S. 15A-145.2(c).

[5] In her brief, Plaintiff alleges that "Worley subpoenaed the original prescription from Rite Aid, which had the carbon copy still attached.  To the naked eye, it was 'clear . . . on the original . . . that nothing had been altered' and Worley took the original prescription to the prosecutor.  ADA Nance dismissed the charges against Spivey upon seeing the original prescription." (DE #25, p. 18)  Plaintiff's assertion that "To the naked eye, it was 'clear . . . on the original . . . that nothing had been altered" is her own personal opinion.  Agent Cherry, who observed the original prescription, reached a different conclusion.  With respect to Plaintiff's allegations that "Worley took the original prescription to the prosecutor" and that "ADA Nance dismissed the charges against Spivey upon seeing the original prescription," there is no competent evidence in the record to support these contentions.  Plaintiff admits that she did not personally witness these events. (JA 242:6-25) Moreover, Plaintiff offers no testimony whatsoever (whether via

234:7-25, 318) On August 26, 2013, Plaintiff obtained an expunction of the criminal charges listed in her N.C. Gen. Stat. § 90-96(e) agreement. (JA 235:10-236:10, 319-320)

On or about November 8, 2012, Detective Norris observed a vehicle driving left of center and nearly hitting a bridge. Consequently, he initiated a traffic stop. (JA 352:9-21, 353:24-356:16) The driver of this vehicle proved to be the Plaintiff's husband. Plaintiff confirms that her husband had been drinking that day. (JA 122:6-7) After stopping the Plaintiff's husband, Detective Norris radioed for assistance from a traffic team from the Columbus County Sheriff's Office that specialized in handling DWIs. Plaintiff confirms that upon her arrival at the scene, other law enforcement officers were present. Plaintiff does not dispute that

---

deposition, affidavit or otherwise) from her criminal attorney Dennis Worley, from Assistant District Attorney Nance, or from anyone else with personal knowledge to support what she purports to have occurred. Plaintiff cites in her brief to a letter from her attorney, Mr. Worley, to the N.C. Board of Nursing in which he advocates on his client's behalf. (JA 878-879) This letter from Mr. Worley, from whom Plaintiff presents no testimony, is inadmissible hearsay. In contrast to the Plaintiff's unsupported claims, the certified court records unambiguously state that Plaintiff's charges were dismissed "per [Plaintiff's] compliance to 90-96 conditions," and for no other reason. (JA 318) Plaintiff's "understanding" of events that she admits she did not personally witness is insufficient to contradict the four corners of the court records. See e.g. Bonvillain v. Blackburn, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); Webster v. Estelle, 505 F.2d 926, 929–30 (5th Cir.1974) (holding that court records "are entitled to a presumption of regularity"); Baker v. Ellis, 204 F.2d 353, 354-355 (5th Cir. 1953) ("recitals of formal court records are not subject to collateral attack").

another deputy completed the stop and transported her husband to the county jail, where his alcohol was tested and he received a citation. (JA 122:9-21) Plaintiff confirms that her husband's DWI charge was dismissed at trial because the District Attorney failed to call Detective Norris -- the officer who had seen the Plaintiff's husband driving erratically and thus had probable cause to stop him -- to testify in the case. (JA 122:22-123:4)

<u>**SUMMARY OF THE ARGUMENT**</u>

As the District Court correctly held, none of the Plaintiff's rights, constitutional or otherwise, were violated. Rather, following an extensive criminal investigation by Agent Cecil Cherry of the SBI, Agent Cherry determined that there was probable cause to seek warrants for the Plaintiff's arrest for falsifying a prescription and improperly obtaining narcotic medication. After consulting with the Assistant District Attorney, Agent Cherry appeared before a neutral and detached magistrate as the complaining witness, seeking warrants for the Plaintiff's arrest. After hearing sworn testimony from Agent Cherry, the magistrate determined that there was probable cause to issue warrants for the Plaintiff's arrest and did so. Because probable cause existed to support the Plaintiff's arrest, Plaintiff's Section 1983 claims under the First and Fourth Amendments fail as a matter of law.

The Plaintiff entered an <u>Alford</u> plea pursuant to the advice of her criminal defendant counsel. Her criminal charges were subsequently dismissed and her conviction expunged pursuant to the provisions of N.C. Gen. Stat. § 90-96(e), in accordance with her plea agreement, such that the proceedings were <u>not</u> terminated in her favor as required to support her state law tort claims for malicious prosecution and abuse of process, which are also defeated by the existence of probable cause supporting her arrest.

Finally, by the District Court correctly dismissed the Plaintiff's state law tort claims for both intentional infliction and negligent infliction of emotional distress, as the Defendants neither engaged in any extreme or outrageous conduct nor were they negligent. Moreover, as the District Court correctly held, Plaintiff is unable to demonstrate the she suffered any severe emotional distress sufficient to support state law tort claims for intentional or negligent infliction of emotional distress.

## ARGUMENT

**THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS BECAUSE THE PLAINTIFF'S ARREST WAS SUPPORTED BY PROBABLE CAUSE; DEFENDANT NORRIS WAS NOT THE COMPLAINING WITNESS AND OTHERWISE DID NOT INITIATE CRIMINAL PROCEEDINGS AGAINST THE PLAINTIFF; THE CRIMINAL PROCEEDINGS AGAINST THE PLAINTIFF WERE NOT TERMINATED IN HER FAVOR; AND BECAUSE PLAINTIFF CANNOT OTHERWISE ESTABLISH THE ELEMENTS NECESSARY TO GO FORWARD WITH HER CLAIMS.**

_____

**I.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT TO DISPUTE THAT PLAINTIFF'S ARREST WAS SUPPORTED BY PROBABLE CAUSE AND THAT HER RIGHTS WERE OTHERWISE NOT VIOLATED.**

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-2553 (1986). Once that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S. Ct. 1348, 1356-1357 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378, 167 L.Ed.2d 686, 1775

(2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Speculative or conclusory allegations will not suffice. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002). For the reasons demonstrated hereinbelow, the District Court properly granted summary judgment in favor of the Defendants, and Plaintiff's speculative and conclusory arguments cannot show otherwise.

## II. PLAINTIFF'S SECTION 1983 CLAIMS FAIL AS A MATTER OF LAW BECAUSE PROBABLE CAUSE EXISTED TO SUPPORT BOTH HER ARREST AND THAT OF HER HUSBAND, AND BECAUSE DETECTIVE NORRIS WAS NOT THE COMPLAINING WITNESS.

In support of her claims that Norris violated her Fourth, First, and Fourteenth Amendment rights, Plaintiff alleges that Norris, acting under color of state law and in an attempt to separate Plaintiff from her husband, used police action against Plaintiff's husband to stop him for driving while intoxicated.[6] Plaintiff further alleges that Norris accessed Plaintiff's prescription medication

---

[6] Plaintiff's second claim for relief alleges a claim for malicious prosecution and seizure in violation of 42 U.S.C. § 1983. Plaintiff's malicious prosecution under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure. See Lambert v. Williams, 223 F.3d 257, 262 (4th Cir.2000) ("there is no such thing as a '§ 1983 malicious prosecution' claim.").

records without a bona fide investigation or court order, and that Norris used police action against Plaintiff to retaliate against her for communicating with her husband by causing her to be arrested for felony and misdemeanor drug charges without probable cause. Plaintiff's Section 1983 claims fail for the following reasons.

## A. THE PLAINTIFF'S ARREST WAS SUPPORTED BY PROBABLE CAUSE.

The Plaintiff's Section 1983 claims fail as a matter of law, because her arrest and subsequent prosecution were supported by probable cause. "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and a seizure of an individual effected without probable cause is unreasonable." Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996); see also Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) ("To establish an unreasonable seizure under the Fourth Amendment, [the plaintiff] needs to show that the officers decided to arrest [her]…without probable cause"). Conversely, an arrest effected with probable cause is reasonable as a matter of law; thus, the existence of probable cause defeats a claim of "unreasonable seizure" under the Fourth Amendment. See e.g., United States v. Jabbour, 259 Fed. Appx. 564, 565 (4th Cir. 2007) (unpublished) ("So long as the arrest was supported by probable cause, there is no constitutional violation"); Street v.

Surdyka, 492 F.2d 368, 372-373 (4th Cir. 1974) ("[T]here is no cause of action for 'false arrest' under Section 1983 unless the arresting officer lacked probable cause.").

Where, as here, an individual was arrested pursuant to a warrant issued by a neutral and detached magistrate, the seizure will be found to be unreasonable only if the officer did not have probable cause to seek the warrant. Malley v. Briggs, 475 U.S. 335, 344-345, 106 S. Ct. 1092, 1098 (1986). As the District Court properly analyzed, the question is then "whether a reasonably well-trained officer in [Agent Cherry's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." (JA 952, citing Malley, 475 U.S. at 345)

Probable cause is a result of a practical, commonsense consideration of all of the circumstances. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983); Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017). It is a nontechnical concept that "deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695, 116 S. Ct. 1657, 1661 (1996). Circumstances are weighed "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." United States v. Dickey-Bey, 393 F.3d 449, 453 (4th Cir. 2004), quoting Gates, 462 U.S. at 232. Under this

"pragmatic, common sense approach," courts "defer to the expertise and experience of law enforcement officers…." Id., citing Ornelas, 517 U.S. at 699. Probable cause "is a fluid concept that turns on the assessment of probabilities, not on any formula such as is applied to proof at trial." Dickey-Bey, 393 F.3d at 454, citing Gates, 462 U.S. at 232. "Only the probability, and not a prima facie showing of criminal activity, is the standard of probable cause." Gates, 462 U.S. at 235. Probable cause "requires more than a bare suspicion" but less evidence than is necessary to convict. See, e.g., Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir.1998); United States v. Gray, 137 F.3d 765, 769 (4th Cir.1998). Indeed, this Court has specifically rejected the argument that "probable cause means more likely than not, [more than] 50/50," and made it clear that "the probable-cause standard does not require that the officer's belief be more likely true than false." United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004) (emphasis added); see also Maryland v. Pringle, 540 U.S. 366, 124 S. Ct. 795 (2003). Therefore, a reasonable officer may have probable cause to believe that a suspect has committed a crime even if the officer's belief is not more likely true than false. See Pringle, 540 U.S. at 372-73 (holding that an officer's belief need only be a "reasonable" conclusion, but not necessarily the most likely or most reasonable conclusion). Moreover, the Supreme Court has made clear that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the

existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 593-4 (2004).

If probable cause exists at the time that an officer seeks issuance of a warrant, then the officer's action of seeking the warrant, and the subsequent arrest, does not violate the Fourth Amendment. Thus, an officer who arrests a suspect pursuant to a warrant does not violate the Fourth Amendment unless that officer did not possess probable cause to seek the warrant. See, e.g., Porterfield, 156 F.3d at 570 (holding that the officers did not violate the Fourth Amendment when they arrested the suspect pursuant to a valid warrant, and "there were sufficient indicia of probable cause to arrest [and] to seek a warrant"); Brooks, 85 F.3d at 184 n. 7 (4th Cir. 1996) (indicating that the issuance of an arrest warrant will insulate the officer from liability unless "the officer who sought the warrant did not possess probable cause"). As held by the Supreme Court in Messerschmidt v. Millender, 565 U.S. 535, 132 S. Ct. 1235 (2012):

> Where the alleged Fourth Amendment violation involves a … seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner….United States v. Leon, 468 U. S. 897, 922–923 (1984).…[W]e have recognized an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Malley, 475 U.S., at 341….**Our precedents make clear, however, that the threshold for establishing this exception is a high one, and it should be**. As we explained in Leon, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination"

because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." Id., at 921….

565 U.S. at 546-547, 132 S. Ct. at 1245 (emphasis added).  Moreover, only the information known to the officer at the time he sought the arrest warrant is relevant.  Smith, 848 F.3d at 253.

The undisputed facts which were known to Agent Cherry at the time that he appeared before Magistrate Greene are as follows:  Cherry had been made aware of questionable circumstances involving Plaintiff related to her filling multiple prescriptions for narcotic pain medication.  Cherry had personally reviewed Plaintiff's prescription history.  He had personally inspected the original August 17, 2012 prescription for Percocet/Endocet presented by Plaintiff to the Rite Aid pharmacy in Whiteville and independently came to the conclusion that it had been altered, in that the "2" had been altered into a "3," causing "20" relating to Percocet to become "30." (JA 594:14-17, 611:10-612:1, 632:20-633:9).   He further knew that thirty tablets of Percocet/Endocet had been dispensed by the Rite Aid pharmacy in Whiteville to plaintiff on August 17, 2012 pursuant to this prescription.  Cherry had also personally interviewed the prescriber, Dr. Lawson, who informed Cherry that he had documented in plaintiff's chart that he (Lawson) had written plaintiff a prescription for twenty (not thirty) tablets of Percocet on

August 17, 2012. (JA 506:20-507:20, 515:24-516:6, 551: 5-19, 975-976) Dr. Lawson stated to Cherry that he would not prescribe thirty tablets and then enter in his patient's chart that he had only prescribed twenty tablets. (JA 467:22-46, 469:4, 620:21-23, 620:24-621:16) Further, Cherry had spoken to Plaintiff who, while denying that she had altered Dr. Lawson's prescription, stated that her husband took her pain medication for his own use, to the extent that she had to hide them from him. (JA 163:1-22, 978-980) Based upon the totality of the circumstances, Cherry determined that there was probable cause to believe that the Plaintiff had altered the August 17, 2012 prescription given to her by Dr. Lawson in order to unlawfully obtain additional Percocet tablets. (JA 632:20-633:9)

As the District Court correctly held, even viewing the facts in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Cherry's probable cause determination was objectively reasonable. Cherry had conducted sufficient investigation to form more than a bare suspicion that plaintiff had altered Dr. Lawson's prescription for Percocet to dispense thirty instead of twenty tablets as prescribed. (JA 953) Plaintiff's contentions that: 1) the ADA, when purportedly presented with the original prescription deemed the charge unsupported – which, as discussed in Footnote 4, is unsupported by any competent evidence and contradicted by the four corners of the certified court records -- or that 2) Dr. Lawson stated in his deposition that if he had been shown the original

prescription he would have confirmed that it was written for thirty tablets of Percocet/Endocet, not twenty [in direct contravention of his own records], are both irrelevant to the analysis, as reasonable but mistaken assumptions by a law enforcement officer do not constitute a constitutional violation. See Herring v. United States, 555 U.S. 135, 139, 129 S. Ct. 695, 699 (2009) ("When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation. The very phrase 'probable cause' confirms that the Fourth Amendment does not demand all possible precision."); Pierson v. Ray, 386 U.S. 547, 555, 87 S. Ct. 1213 (1967) ("[A] peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved".). Plaintiff herself acknowledged in her deposition the discrepancy between the prescription for 30 Percocet/Endocet tablets which she presented to the pharmacist and Dr. Lawson's medical records, which showed that he had only written the prescription for 20 tablets. Ms. Spivey testified that the reason for this discrepancy was that "Dr. Lawson made a mistake, error. Intentional or not intentional, I – I – I wouldn't think so because, I mean, I think that would cause him a lot of trouble with, you know, documents not being correct, especially as far as narcotics. But, yes, that definitely was a mistake there on his part." (JA 217:2-15)

That probable cause existed is further demonstrated by the Plaintiff's entry of an Alford plea. "A defendant enters into an Alford plea when she proclaims she is innocent, but "intelligently concludes that h[er] interests require entry of a guilty plea and **the record before the judge contains strong evidence of actual guilt**." North Carolina v. Alford, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970) (emphasis added). Thus, the Plaintiff, or more particularly, her criminal defense attorney, who certainly had the opportunity and motivation to interview Dr. Lawson and to inspect the original prescription before advising Plaintiff to enter an Alford plea, recognized that there was ample evidence to conclude that she had violated the law. In summary, because the Plaintiff's arrest was supported by probable cause, her claims fail as a matter of law.

## B. PLAINTIFF'S CLAIMS FAIL, AS NORRIS WAS NOT THE COMPLAINING WITNESS.

In her brief, Plaintiff makes the nonsensical assertion that "Because Norris took the lead conducting the investigation against Spivey, but omitted himself from the arrest warrant, Norris led the magistrate, and prosecutor, to believe that there was probable cause when none existed." (DE #25, p. 27) Plaintiff resorts to this contortion because the District Court correctly held that "it is undisputed that whatever role Norris played in the investigation of Plaintiff he was not the complaining witness who presented an affidavit to Magistrate Greene" in support

of a warrant for the Plaintiff's arrest. (JA 953) Rather, the sole complaining witness was Agent Cherry, whom it is undisputed had personally interviewed Dr. Lawson, personally participated in the interview of the Plaintiff, personally inspected the August 17, 2012 prescription and came to the independent conclusion that it had been altered, personally inspected Dr. Lawson's records regarding the Plaintiff, and personally met with the Assistant District Attorney to discuss his personal conclusion that there was probable cause to believe that the Plaintiff had committed criminal offenses.

That Detective Norris was not the "complaining witness" is further fatal to the Plaintiff's claims. A "complaining witness" is the person who initiates a criminal prosecution by providing sworn testimony to obtain an arrest warrant. Malley, 475 U.S. at 340 ("complaining witness" is "one who procured an arrest warrant by submitting a complaint"); Rehberg v. Paulk, 566 U.S. 356, 370-371, 132 S. Ct. 1497, 1507 (2012); Kalina v. Fletcher, 522 U.S. 118, 129-31, 118 S. Ct. 502 (1997). The reason that the definition of "complaining witness" is confined to the person who swears out the warrant is because "the act of personally vouching for the truth of the facts that provide the evidentiary support for a finding of probable cause" is the specific function that can give rise to liability for malicious prosecution. Young v. Vega, 574 Fed. Appx. 684, 689 (6th Cir. 2014) ("A statement must be sworn to qualify as the act of a complaining witness."); accord

Kalina, 522 U.S. at 129-31 (holding that prosecutor acted as "complaining witness" when he provided sworn affidavit testimony supporting application for arrest warrant). Again, there is no dispute regarding who "procured [the] arrest warrant by submitting a complaint" for Plaintiff's charges: it was Special Agent Cherry. Agent Cherry testified before Magistrate Greene, while Norris did not. (JA 626:3, 627:4, 634:12-18, 846: ¶ 8). Indeed, Cherry is identified as the "complaining witness" on the face of the arrest warrants. (JA 1021-1022).

In order to be held liable pursuant to Section 1983, it is well established that a defendant must have personally participated in the purported violation of a plaintiff's rights. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009); Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 691–95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) ("personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity.") Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant."). Here, the undisputed evidence demonstrates that Agent Cherry, not defendant Norris obtained the arrest warrants giving rise to the Plaintiff's claims. Consequently, Plaintiff's claims against Norris fail as a matter of law.

## C. PLAINTIFF'S SECTION 1983 CLAIMS ALLEGING VIOLATIONS OF HER FIRST AMENDMENT AND FOURTEENTH AMENDMENT RIGHTS LIKEWISE FAIL AS A MATTER OF LAW.

Plaintiff contends that her First Amendment right to freedom of association and her Fourteenth Amendment right to privacy, personal autonomy in her marriage, and equal protection were violated by Norris. Insofar as such claims are derivative of Plaintiff's Fourth Amendment unlawful seizure/malicious prosecution claims, they fail, because as shown above, there is no genuine issue of material of fact as to whether her Fourth Amendment rights were violated: They were not.

To the extent that Plaintiff's claims are based upon Norris' stop of the Plaintiff's husband for driving under the influence, they also fail. It is undisputed that Norris observed a vehicle driving left of center and nearly hitting a bridge and that he initiated a traffic stop as a result. (JA 352:9-21, 353:24-356:16) Plaintiff confirms that her husband was the driver of this car, and that he had been drinking that day, something that he admitted to officers. (JA 122:6-7) Plaintiff does not dispute that another deputy completed the stop and transported her husband to the county jail, where his alcohol was tested and he received a citation. (JA 122:9-21) Plaintiff confirms that her husband's DWI charge was dismissed at trial because the District Attorney failed to call Detective Norris to testify regarding the

circumstances under which he had pulled her husband over. (JA 122:22-123:4) As correctly determined by the District Court, Plaintiff fails to proffer any evidence which would create a genuine issue of material fact as to whether Norris interfered with Plaintiff's right to privacy, free association, or equal protection of the law when he stopped Plaintiff's husband's vehicle on suspicion of drunk driving. (JA 955-956) Accordingly, the District Court properly entered summary judgment in favor of the defendants as to these claims.

### D.    DETECTIVE NORRIS IS ENTITLED TO QUALIFIED IMMUNITY.

In granting summary judgment in his favor, the District Court properly determined that Norris was entitled to qualified immunity. The defense of qualified immunity shields government officials from personal liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 341; see also Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012).

Once an official raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating the existence of a "clearly established" right she

claims was violated. <u>Mitchell v. Rice</u>, 954 F.2d 187, 190 (4th Cir. 1992). A court

employs a two-step procedure for determining whether qualified immunity applies

that "asks first whether a constitutional violation occurred and second whether the

right violated was clearly established."[7] <u>Melgar v. Greene</u>, 593 F.3d 348, 353 (4th

Cir. 2010) (<u>citing</u> <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)). In determining whether

the right was "clearly established," the court must "define the right in light of the

specific context of the case, not as a broad general proposition." <u>Parrish v.

Cleveland</u>, 372 F.3d 294, 301 (4th Cir. 2004). A right is "clearly established" only

if "the contours of the right [are] sufficiently clear that a reasonable official would

understand that what he is doing violates that right." <u>Wilson</u>, 526 U.S. at 614-15.

"[T]he contours of the right must have been **so conclusively drawn as to leave no

doubt** that the challenged action was unconstitutional." <u>Edwards</u>, 178 F.3d at 251

(emphasis added) A right cannot be considered "clearly established" for the

purposes of qualified immunity if courts disagree about the contours of the right.

"If judges thus disagree on a constitutional question, it is unfair to subject

[government officials] to money damages for picking the losing side of the

controversy." <u>Wilson</u>, 526 U.S. at 618; <u>accord</u> <u>McVey v. Stacey</u>, 157 F.3d 271,

---

[7] In <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808 (2008), the Supreme Court modified the two-step analysis outlined in <u>Saucier</u> by holding that trial and appellate courts had discretion to decide which one of the two prongs of the qualified immunity should be addressed first, based on the circumstances of the particular case. <u>Pearson</u>, 555 U.S. at 236.

277 (4th Cir. 1998) ("we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues."). Government officials should not be "expected to predict the future course of constitutional law." Wilson, 526 U.S. at 617. "If the right was not 'clearly established' in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Parrish, 372 F.3d at 302.

Officers are given latitude in the determination of probable cause and a reasonable mistake of either fact or law will not subject the officer to liability. Saucier, 533 U.S. at 206-07; see also Malley, 475 U.S. at 343 (stating that the doctrine of qualified immunity contemplates that law enforcement officials will make the occasional mistake in judgment). Even if an officer is mistaken about whether probable cause is actually present, he is still entitled to qualified immunity so long as his mistaken belief was an objectively reasonable one. Hunter v. Bryant, 502 U.S. 224, 226–27, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (stating that "the reasonableness of defendants' actions is not contingent upon whether probable cause actually existed"); Anderson v. Creighton, 483 U.S. 635, 641 (1987) (holding officers are entitled to qualified immunity even where they "reasonably but mistakenly conclude that probable cause is present."); Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994) ("In order for qualified immunity to attach,

it is not necessary that probable cause for an arrest actually exist. It is necessary

only that the officer be objectively reasonable in believing that it is present.");

accord Torchinsky v. Siwinski, 942 F.2d 257, 260-61 (4th Cir. 1991).

Because Cherry's determination that probable cause existed was not

objectively unreasonable — and Norris could have also reasonably believed that

probable cause was present —, the District Court correctly concluded that Norris

is entitled to qualified immunity as Plaintiff cannot establish that her constitutional

rights were violated. (JA 955)

### E. PLAINTIFF'S SECTION 1983 OFFICIAL CAPACITY CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's Section 1983 claims against Detective Norris in his official

capacity are in reality claims against Sheriff Hatcher.[8] In addition to the reasons

previously shown, these claims further fail for several reasons. First, the doctrine

of *respondeat superior* may not serve as the basis for imposing section 1983

liability on a governmental entity such as the Sheriff of Columbus County.

---

[8] It is well-settled that suits against officers in their official capacities "represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Social Services, 436 U.S. 658, 690 n. 55 (1978). See also Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985) (an official capacity claim against a governmental official is merely a suit against the entity for which the officer is employed); Moore v. City of Creedmoor, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) ("Official capacity" suits are merely another way of pleading an action against the governmental entity of which the individual is an agent.")

Collins v. City of Harker Heights, 503 U.S. 115, 121, 112 S. Ct. 1061, 1067 (1992). Second, a Section 1983 claim against an agency cannot be established absent a constitutional violation by the agent. See e.g. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991) cert. denied, 502 U.S. 1095, 112 S. Ct. 1172 (1992). Because the Plaintiff's Section 1983 claims against Detective Norris in his individual capacity fail as a matter of law, her official capacity claims likewise fail. Third, even assuming the Plaintiff's constitutional rights were violated, which they were not, her claims against Detective Norris in his official capacity fail because the Plaintiff cannot show that her constitutional rights were violated as a result of any unconstitutional policy or custom of the Sheriff of Columbus County. It is well established that Sheriff Hatcher cannot be held liable under 42 U.S.C. § 1983 for a deputy's or agent's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins, 503 U.S. at 120-121, 112 S. Ct. at 1066 (1992) (quoting Monell, 436 U.S. at 691, 98 S. Ct. at 2036). Governmental liability attaches only when "execution of a government's policy or custom, whether made by its law makers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38. "Thus, not only must there be some degree of 'fault' on the part of the [governmental entity] in establishing or tolerating the custom or policy, but there also must exist a causal

link between the custom or policy and the deprivation." <u>City of Oklahoma City v.</u>
<u>Tuttle</u>, 471 U.S. 808, 820, 105 S. Ct. 2427, 2434-35, 85 L. Ed. 2d 791 (1985).

Plaintiff has neither alleged nor brought forth any evidence that any purported
violation of her constitutional rights, of which there was none, was caused by an
official custom or policy of the Sheriff of Columbus County.[9] Accordingly,
Plaintiff's official capacity Section 1983 claims fail as a matter of law.

## III. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO PLAINTIFF'S STATE LAW TORT CLAIMS.

The District Court correctly held that Plaintiff's state law tort claims for
malicious prosecution, abuse of process, and both intentional and negligent
infliction of emotional distress each fail on their merits. Moreover, the District
Court further correctly held that Norris was entitled to public officer's immunity
as to Plaintiff's state law tort claims against him in his individual capacity.
Further, while it did not reach the issue, Plaintiff's official capacity state law tort
claims are further barred by governmental immunity.

### A. PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION FAILS AS A MATTER OF LAW.

Under North Carolina law, to prove a claim for malicious prosecution a
plaintiff must establish four elements: "(1) the defendant initiated the earlier

---

[9] Plaintiff's unsupported <u>Monell</u> claims are further defeated by the unopposed
Affidavit of Sheriff Hatcher. (JA 650-654)

proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." Beroth Oil Co. v. Whiteheart, 173 N.C. App. 89, 99, 618 S.E.2d 739, 746 (2005) (quoting Best v. Duke Univ., 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994)). As the Plaintiff is unable to demonstrate these elements, the District Court correctly granted summary judgment in favor of the Defendants as to her claim for malicious prosecution.

As previously demonstrated, it is undisputed that Detective Norris was not the complaining witness and otherwise did not initiate the Plaintiff's arrest and subsequent prosecution. Instead, Agent Cherry, at the direction of Assistant District Attorney Nance, sought and obtained warrants for the Plaintiff's arrest. Accordingly, the Plaintiff cannot establish the first element of the tort of malicious prosecution – that Norris initiated criminal proceedings against her.

With respect to the second element, Plaintiff's allegations that Norris acted maliciously toward her are contradicted by her own deposition testimony. (JA 120:14-22; 139: 21-140:13, 224:15-225:3) While Plaintiff alleges that Detective Norris harassed and bullied her and improperly attempted to insert himself into her private life, Plaintiff's sworn testimony belies these claims. Plaintiff confirmed that Norris, a longtime family friend, never touched her inappropriately or threatened her either physically or verbally. (JA 224:15-225:3) Plaintiff

confirmed that her husband is an alcoholic and that Norris was aware of this problem. (JA 226:1-7) Plaintiff further confirmed that her husband was also pilfering her narcotics medications to such an extent that she had to hide them from him. (JA 163:1-22, 978-980) Plaintiff confirmed that her husband was indeed drinking and driving on November 8, 2012, which resulted in his being arrest for DUI. (JA122:4-21) Plaintiff testified that Detective Norris, a family friend, contacted her "several times" stating "[her husband] has a problem. He has an addiction. [Norris] can help him. [Norris] could get him into a rehab." (JA 139:21-140:13) While Plaintiff claims to not have appreciated Norris' concern for her well-being, advice and offers to help, other people could reasonably feel differently. In any event, notwithstanding her claims that Norris purportedly harassed her, Plaintiff admits that she never felt sufficiently aggrieved to tell Norris that he made her uncomfortable, nor ask anyone else to do so on her behalf. (JA 120:14-22)

Further, as shown at length supra, the Plaintiff's arrest and subsequent prosecution were supported by probable cause, negating the third element.

Finally, the Plaintiff cannot show that the criminal proceedings terminated in her favor. The Plaintiff was convicted pursuant to her Alford plea. As a result of Plaintiff's plea agreement and her compliance with the provisions of N.C. Gen. Stat. § 90-96(e), her conviction was subsequently dismissed and her criminal

record expunged. Although beneficial to the Plaintiff, the termination of the criminal proceedings pursuant to her plea agreement and her compliance with the provisions of N.C. Gen. Stat. § 90-96(e) was not "in her favor" for purposes of establishing a claim for malicious prosecution under North Carolina law. "Where the criminal action is withdrawn or terminated by compromise brought about by [the criminal] defendant, an action for malicious prosecution based thereon, will not lie." Alexander v. Lindsey, 230 N.C. 663, 671, 55 S.E.2d 470 (1949); ee also Welch v. Cheek, 125 N.C. 353, 34 S.E. 531 (1899); Marcus v. Bernstein, 117 N.C. 31, 23 S.E. 38 (1895). As shown by the Plaintiff's own testimony and the certified copies of court records, the charges against the Plaintiff were "withdrawn or terminated by compromise brought about by" the Plaintiff. More specifically, the felony charges against Plaintiff were dropped as part of a plea agreement entered into by the Plaintiff, in exchange for her Alford plea to a single misdemeanor charge of unlawful possession of a Schedule II controlled substance. Plaintiff's conviction was later dismissed and her record expunged pursuant to the operation of North Carolina General Statute § 90-96, as she intended pursuant to her plea agreement. Despite her improper attempts to do so, Plaintiff cannot show that the criminal proceedings against her were terminated for any other reason. Thus, since the criminal action against the Plaintiff was "withdrawn or terminated by compromise" brought about by the Plaintiff and her attorney, "an action for

malicious prosecution . . . will not lie." <u>Alexander</u>, <u>supra</u>. In summary, the District Court correctly granted summary judgment in favor of the Defendants as to Plaintiff's claim for malicious prosecution, as she cannot establish the elements of this claim.

## B. PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS FAILS AS A MATTER OF LAW.

"Abuse of process is the misapplication of civil or criminal process to accomplish some purpose not warranted or commanded by the process." David A. Logan & Wayne A. Logan, <u>North Carolina Torts</u> § 19.40 at 432 (1996) (<u>citing</u> <u>Ellis v. Wellons</u>, 224 N.C. 269, 29 S.E.2d 884 (1944)). "The distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued." <u>Barnette v. Woody</u>, 242 N.C. 424, 431, 88 S.E.2d 223, 227 (1955).

Two elements must be proven in order to establish a claim for abuse of process: (1) that the defendant had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used, and (2) that the defendant committed some act that is a "malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ." <u>Stanback v. Stanback</u>, 297 N.C. 181, 200, 254 S.E.2d 611, 624

(1979).  Aside from the fact that Norris did not initiate criminal proceedings against her as discussed previously, Plaintiff's own deposition testimony defeats her claims that Norris had any ulterior motive in connection with those proceedings.  (JA 120:14-22; 224:15-225:3; 226:1-7)  Moreover, Plaintiff cannot show that Norris committed any act after the issuance of the arrest warrants to "accomplish some purpose not warranted or commanded by the writ."  As the District Court correctly held, "the record reflects no genuine issue of material fact as to whether the criminal process involving either plaintiff or her husband, who is not a party to this action, once initiated, involved some act by Norris which was not proper in the regular prosecution of the proceeding."  (JA 958)

### C.   PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW.

The tort of intentional infliction of emotional distress is recognized in North Carolina in a limited number of circumstances "where conduct exceeds all bounds usually tolerated by a decent society and the conduct causes mental distress of a very serious kind."  Stanback, 297 N.C. at 197, 254 S.E.2d at 622.  In Dickens v. Puryear, 302 N.C. 437, 276 S.E.2d 325 (1981), the North Carolina Supreme Court has established a stringent three-prong test for determining if conduct arises to the level of intentional infliction of emotional distress.  Those elements are: (1) extreme and outrageous conduct, (2) which is intended to cause, and (3) does

cause severe emotional distress to another. Each element must be satisfied in order to avoid dismissal. Morrison-Tiffin v. Hampton, 117 N.C. App. 494, 451 S.E.2d 650 (1995). Such claims are limited to conduct "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Briggs v. Rosenthal, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985). As shown below, Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law, because she is unable to establish any of the required elements of the claim.

### 1. The Actions Taken by Detective Norris Were, as a Matter of Law, Not "Extreme and Outrageous."

Whether the conduct alleged is sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress is initially a question of law for the Court. See e.g. Lenins v. K-Mart Corporation, 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990). In the instant case, Norris did not engage in "extreme and outrageous" conduct. Instead, Norris obtained the support of the North Carolina SBI and assisted that agency in its investigation of suspected criminal activity by the Plaintiff. SBI Agent Cherry concluded that the Plaintiff had altered a prescription for narcotics and, after consultation with the District Attorney's office, sought warrants for the Plaintiff's arrest from a neutral and

detached magistrate who concluded that probable cause existed to issue two warrants for the Plaintiff's arrest, which subsequently resulted in the Plaintiff's entry of an <u>Alford</u> plea. Arresting a criminal suspect does not arise to the level of extreme and outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. <u>See e.g.</u> <u>Kling v. Harris Teeter Inc.</u>, 338 F. Supp. 2d 667, 673-74 (W.D.N.C. 2002) (Under North Carolina law, police officers' conduct in arresting suspect at 4:00 a.m. in front of family member did not rise to level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress, even if the suspect subsequently had to obtain medical and mental health treatment), <u>aff'd per curiam</u>, 86 Fed. Appx. 662 (4th Cir. 2004). In summary, Norris' actions were not, as a matter of law, sufficiently extreme and outrageous to allow Plaintiff to go forward with a claim for intentional infliction of emotional distress.

**2.      Plaintiff Has Brought Forward No Evidence That Detective Norris Intended to Cause Her Severe Emotional Distress.**

The second prong of the <u>Dickens</u> test is that the alleged tort-feasor must have intended to cause severe emotional distress." In this case, there is no competent evidence to show that Norris took any action with the intention of causing the Plaintiff "severe emotional distress." Therefore, the second element of

the tort cannot be met.  See Mullis v. The Pantry, Inc., 93 N.C. App. 591, 378

S.E.2d 578, rev. den, 325 N.C. 272 (1989).

> **3.     Plaintiff Has Failed to Bring Forward Evidence That Any Conduct on the Part of Detective Norris Caused Her to Suffer Severe Emotional Injury.**

To support a claim for intentional infliction of emotional distress, not only

must the alleged wrongdoing be "extreme" but it must also cause severe emotional

injury.  In Waddle v. Sparks, 331 N.C. 73, 414 S.E.2d 22 (1992), the North

Carolina Supreme Court defines "severe emotional distress" as "any emotional or

mental disorder, such as, for example, neurosis, psychosis, chronic depression,

phobia, or any other type of severe and disabling emotional or mental condition

which may be generally recognized and diagnosed by professionals trained to do

so." Id. at 27 (citing Johnson v. Ruark Obstetrics & Gynecology Assoc., 327 N.C.

283, 304, 395 S.E.2d 85, 97, reh'g denied, 327 N.C. 644, 399 S.E.2d 1330

(1990)).  In the instant case, Plaintiff produced no competent evidence that any

actions on the part of Norris caused her "severe emotional injury."  She did not

produce any medical records substantiating any such condition, disclose pursuant

to Rule 26(a)(2) an expert of any kind whom she contends would testify in support

of such purported emotional distress, nor otherwise produce testimony from

anyone competent to substantiate that she sustained any such injury as a result of

the Defendants.  "Summary judgment may be proper on an intentional infliction of

emotional distress claim '[w]here the plaintiff fail[s] to forecast evidence of medical documentation to substantiate alleged severe emotional distress or severe and disabling psychological problems.'" See e.g. Byrd v. Hopson, 265 F. Supp. 2d 594, 605 (W.D.N.C. 2003) (medical records which fail to disclose treatment for severe distress or consultation of mental health professionals insufficient to resist summary judgment on intentional infliction of emotional distress claim) (quoting Dobson v. Harris, 134 N.C. App. 573, 579, 521 S.E.2d 710, 715 (1999), rev'd on other grounds, 352 N.C. 77, 530 S.E.2d 829 (2000)). The District Court correctly concluded that notwithstanding Plaintiff's passing reference in her interrogatory responses that her primary care physician, Dr. Armonio, had diagnosed her with anxiety,[10] she failed to forecast medical evidence in support of her allegations that she had suffered severe emotional distress as a result of actions on the part of the Defendants sufficient to survive summary judgment. (JA 958-59) In summary, because Plaintiff cannot satisfy the elements required to support her claim for intentional infliction of emotional distress, the District Court correctly granted summary judgment in favor of the Defendants.

---

[10] Plaintiff's interrogatory responses do not state that Dr. Armonio had diagnosed her with anxiety or any other qualifying condition as a result of any conduct on the part of Norris or any other defendants. (JA 293) Moreover, in her deposition testimony, Plaintiff acknowledged that she was already taking Xanax [commonly used to treat anxiety, see http://www.webmd.com/drugs/2/drug-9824/xanax-oral/details], prescribed by Dr. Armonio, prior to the events alleged in her Amended Complaint. (JA 151:25-152:9)

**D.    PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW.**

To establish a claim for negligent infliction of emotional distress under North Carolina law, a plaintiff must allege and prove that: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress or mental anguish; and (3) the conduct did in fact cause the plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

Plaintiff cannot demonstrate that Detective Norris violated any duty owed to her.  Norris' sworn duty was to enforce and uphold the law.  He sought and obtained assistance from the North Carolina SBI to investigate suspicions that the Plaintiff was engaged in drug diversion, suspicions that the SBI, the District Attorney, and Magistrate Greene determined were founded, and which resulted in the Plaintiff subsequently entering an Alford plea upon the advice of counsel. Accordingly, Norris was not negligent, such that Plaintiff's claim for negligent infliction of emotional distress fails as a matter of law.  Johnson, 327 N.C. at 304, 395 S.E.2d at 97.

Moreover, Plaintiff has not produced any evidence sufficient to establish that it was reasonably foreseeable to Norris that his conduct, which was lawful,

would cause her any severe emotional distress.  Further, as shown above, Plaintiff cannot show she actually suffered any severe emotional distress as a result of any conduct on the part of Norris, as required under North Carolina law to go forward with her claim for negligent infliction of emotional distress.

Although the District Court did not reach the issue, Plaintiff's claim for negligent infliction of emotional distress further fails because the alleged negligent acts on the part of Norris are the same purported acts giving rise to her claim for intentional infliction of emotional distress.  This manner of pleading negligent infliction of emotional distress has long been held to be insufficient.  See Eubanks v. State Farm Fire and Casualty Company, 126 N.C. App. 483, 485 S.E.2d 870, rev. den. 347 N.C. 265, 493 S.E.2d 452 (1997) (a plaintiff cannot assert a claim for negligent infliction of emotional distress in the alternative to a claim for intentional infliction of emotional distress when the plaintiff fails to allege any new facts separate from those supporting the claim for intentional infliction); see also Mitchell v. Lydall, Inc., 1994 WL 38703, *3 (4th Cir. 1994) (unpublished) (A claim for negligent infliction of emotional distress is subject to dismissal when "the material factual allegations charge nothing but intentional acts . . . .").

In sum the District Court correctly held that the Defendants are entitled to summary judgment as to Plaintiff's claim for intentional infliction of emotional distress.

## E. NORRIS IS ENTITLED TO PUBLIC OFFICER'S IMMUNITY IN HIS INDIVIDUAL CAPACITY.

Under North Carolina law, public officers like Detective Norris enjoy immunity from civil tort liability for their discretionary actions undertaken pursuant to their official duties. See, e.g., Jacobs v. Sherard, 36 N.C. App. 60, 64, 243 S.E.2d 184, 188 (1978). The general rule is that a public officer is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his actions "were corrupt or malicious or if he acted outside and beyond the scope of his duties." Jones v. Kearns, 120 N.C. App. 301, 305, 462 S.E.2d 245, 247 (1995). A claimant must both allege and prove corruption or malice on the part of a public officer engaged in the performance of his duties; absent such proof, the defendant is entitled to summary judgment. See Jones, 120 N.C. App. At 306, 462 S.E.2d at 248; Hare v. Butler, 99 N.C. App. 693, 700-01, 394 S.E.2d 231, 237 (1990). Public officers are presumed to be acting in good faith and the plaintiff must offer "substantial evidence" to overcome this presumption. See Leete v. County of Warren, 341 N.C. 116, 119, 462 S.E.2d 476, 478 (1995).

Plaintiff failed to offer any competent evidence to overcome the presumption that Norris acted in good faith, nor did she produce any competent evidence that he was "corrupt" or "malicious." As the District Court correctly held, both Plaintiff's arrest and the arrest of her husband were supported by probable cause. Moreover, Plaintiff admits that Norris never touched her inappropriately or made any inappropriate sexual advances towards her, nor did she ever feel sufficiently aggrieved to tell Norris that he made her uncomfortable or ask anyone else to do so on her behalf. (JA 120:14-22; 224:15-225:3) Because the Plaintiff fails to demonstrate malice or corruption on the part of Norris, the District Court correctly held that he is entitled to public officer's immunity, such that her individual capacity state law tort claims against him are barred.

### F. PLAINTIFF'S OFFICIAL CAPACITY STATE LAW TORT CLAIMS ARE BARRED BY GOVERNMENTAL IMMUNITY.

In addition to the Plaintiff's claims state law tort claims each failing as a matter of law as discussed above, her official capacity state law tort claims further fail because governmental immunity has not been waived beyond the amount of Sheriff Hatcher's official bond.

"The doctrine of sovereign immunity bars actions against public officials sued in their official capacities. Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity." Phillips v. Gray, 163 N.C. App. 52,

56-57, 592 S.E.2d 229, 232 (2004). "Sovereign immunity ordinarily grants the state, its counties, and its public officials, in their official capacity, an unqualified and absolute immunity from law suits.  The rule of sovereign immunity applies when the governmental entity is being sued for the performance of a governmental, rather than proprietary, function."  Id.  The exercise of law enforcement duties and services is a governmental function.  Price v. Davis, 132 N.C. App. 556, 559-60, 512 S.E.2d 783, 786 (1999).

Governmental officials such as county sheriffs are entitled to governmental immunity unless they waive it through the purchase of insurance; however, any waiver is limited to the extent of insurance coverage.  Satorre v. New Hanover County Board of Commissioners, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004) (citing N.C. Gen. Stat. § 153A-435(a)).  "If the insurance policy does not indemnify the defendant against the [ ] acts alleged in plaintiff's complaint, defendant has not waived its sovereign immunity." Doe v. Jenkins, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001) (internal quotations and citations omitted).

Thus, in a suit against a public official in his official capacity, it must be determined whether there is an insurance policy in which that official has waived governmental immunity for the claims asserted.  Dalenko v. Wake County Department of Human Services, 157 N.C. App. 49, 55, 578 S.E.2d 599, 603 (2003).

The events complained of by the Plaintiff occurred from on or about September 2012 to February 2013. During this period of time, the only insurance coverage the Sheriff of Columbus County had was through a contract between Columbus County and the North Carolina Association of County Commissioners Liability and Property Pool. (JA 656, 658, 838) This contract does not waive, but rather preserves, governmental immunity as to Plaintiff's state common law tort claims. Thus, these claims are barred.

Section VI of the policy is entitled "Law Enforcement Liability Coverage." The last paragraph of Section VI.B states:

> The parties to this Contract intend for no coverage to exist under Section VI (Law Enforcement Liability Coverage) as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

See Policy, Sec. VI.B. (JA 777)

The Policy's "Exclusions" are set forth later in Section VI.G. These Exclusions state, in pertinent part:

> **G.    Exclusions**
>
> Section VI (Law Enforcement Liability Coverage) of this Contract does not apply to any claim as follows:

> 1. any claim, demand, or cause of action against any Covered Person as to which the Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law.

See Policy, Sec. VI(F)(1), p. 5. (JA 779)

Under controlling North Carolina law, this specific policy language has been repeatedly held to preserve governmental immunity. See e.g. Owen v. Haywood County, 205 N.C. App. 456, 697 S.E.2d 357 (2010); Earley v. Haywood County Department of Social Services, 204 N.C. App. 338, 694 S.E.2d 405 (2010); Frink v. Batten, 197 N.C. App. 231, 676 S.E.2d 670 (2009); Patrick v. Wake County Department of Human Resources, 188 N.C. App. 592, 596, 655 S.E.2d 920, 923 (2008); Magana v. Charlotte-Mecklenburg Board of Education, 183 N.C. App. 146, 148-49, 645 S.E.2d 91, 92-93 (2007). Accordingly, although the District Court did not reach this issue, Plaintiff's official capacity state law tort claims are further barred by governmental immunity to the extent that she seeks to recover an amount in excess of Sheriff Hatcher's official bond.

## G. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM ON SHERIFF HATCHER'S OFFICIAL BOND.

N.C. Gen. Stat. § 58-76-5 provides a plaintiff with a statutory cause of action on a sheriff's official bond in addition to any state common law cause of action a plaintiff might have. Stafford v. Barker, 129 N.C. App. 576, 585, 502

S.E.2d 1, 6, <u>rev. den.</u>, 348 N.C. 695 (1998). However, in order to successfully prevail on such a claim, the plaintiff must be able to prove every element of her underlying common law tort claims. <u>Id</u>. As shown above, the District Court correctly determined that the Plaintiff's state law tort claims each fail as a matter of law. Under <u>Stafford</u>, Plaintiff's inability to prove every element of her common law tort claims also defeats her statutory claim under N. C. Gen. Stat. § 58-76-5. Accordingly, the District Court correctly granted summary judgment as to Plaintiff's claim against Western Surety Company on the Sheriff's official bond.

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the March 29, 2017 Order and Judgment of the District Court granting defendant's motion for summary judgment as to all of the Plaintiff's claims.

Respectfully submitted, this the 28th day of August, 2017.

/S/ BRADLEY O. WOOD
Bradley O. Wood
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
One West Fourth Street
Winston-Salem, North Carolina 27102
Telephone: (336) 728-7012
bwood@wcsr.com

*Counsel for Kevin Norris in his official capacity,*
*Lewis L. Hatcher, and Western Surety Company*

/S/ NORWOOD P. BLANCHARD, III
Norwood P. Blanchard, III
Crossley McIntosh Collier Hanley & Edes, P.L.L.C.
5002 Randall Parkway
Wilmington, NC 28441
Telephone: (910) 762-9711
norwood@cmclawfirm.com

*Counsel for Kevin Norris in his individual capacity*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*11,393*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief document complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: August 28, 2017     /s/ Bradley O. Wood
                *Counsel for Appellees*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 28th day of August, 2017, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

>Randolph M. James
>Post Office Box 20069
>Winston-Salem, North Carolina 27120
>(336) 724-7707
>
>*Counsel for Appellant*
>
>Norwood P. Blanchard, III
>Crossley McIntosh Collier Hanley & Edes, P.L.L.C.
>5002 Randall Parkway
>Wilmington, North Carolina 28441
>(910) 762-9711
>
>*Counsel for Kevin Norris in his individual capacity*

I further certify that on this 28th day of August, 2017, I caused the required copy of the Brief of Appellees to be hand filed with the Clerk of the Court.

/s/ Bradley O. Wood
*Counsel for Appellees*
